Russell Greer
6337 South Highland Dr.
#209
Holladay, Utah 84121
801-895-3501
russmark@gmail.com
Pro Se Litigant

FILED

2018 SEP 14   AM 11: 42

U.S. DISTRICT COURT
MIDDLE DISTRICT OF TN

# IN THE UNITED STATES DISTRICT COURT

## MIDDLE DISTRICT OF TENNESSEE, NASHVILLE DIVISION

| | |
|---|---|
| **RUSSELL G. GREER,**<br><br>      Plaintiff<br><br>v.<br><br>**TAYLOR A. SWIFT,**<br><br>      Defendant | **MOTION FOR ENTRY OF DEFAULT<br>FINAL JUDGEMENT**<br><br>   Case No.:      3:18-cv-00394<br><br>Presiding Judge: Aleta A. Trauger<br><br>Magistrate Judge: Alistair Newbern |

Plaintiff, Russell G. Greer, who is representing himself - for now - in this matter, moves this Court for entry of a default judgment as to defendant Taylor Alison Swift, upon the Complaint heretofore filed and served upon the defendant, by service upon defendant's law firm, Venable, LLP, in accordance with the provisions of Rule 55(b)(2), Federal Rules of Civil Procedure, and in support thereof shows the Court the following.

## I. FACTUAL AND PROCEDURAL BACKGROUND

### A. Plaintiff's Allegations

Plaintiff filed the Complaint on April 25th, 2018, alleging that Defendant Taylor Swift failed to use disclaimers that warned that her publicity stunts and statements (made in commercial and non-commercial contexts) were not meant to be sweeping advances, and that her stunts did not create subtle invitations or representations for Plaintiff (or anybody else) to invest time and money to have similar success, as shown in her publicity stunts and statements. Compl. ¶¶ 71-81. Such a duty is warranted, given Swift's public figure status; given that Swift is the owner of her intellectual property and based upon public policy, which consists of federal laws and regulations and case law and several well-regarded case studies.

### B. Procedural History Related to Defendant's Default

Plaintiff's process server served defendant's law firm, Venable LLP, with the summons and Complaint on August 7, 2018. See Proof of Service, Doc. 9 (August 14, 2018). Under *Federal Rule of Civil Procedure 12(a)(1)(A)(i)*, the original deadline for Venable LLP to respond to the Complaint was August 28, 2018. That date has since passed, with no reply from defendant. Venable LLP was the correct firm to serve, as they have openly represented Defendant Taylor Swift in various matters and referred to himself as Taylor Swift's personal attorney. The attorney who represents Swift is William Briggs. Months before Venable LLP was served, Plaintiff left voice messages with Briggs, other attorneys at Venable LLP, Swift's direct managers and

Swift's publicist. Further, Plaintiff emailed said representatives with Waivers of Service. **Exhibit A.** No response was ever given to Plaintiff.

## II. ARGUMENT

### A. Standard for Entering Default Judgment

Under *Federal Rule 55(b)(2)*, this Court may enter a default judgment against a defendant that has failed to defend. Entry of a default judgment is appropriate if the defendant's liability is well-pled in the complaint and the defendant has failed to participate in the litigation in good faith. *Eagle Hosp. Physicians v. SRG Consulting,* 561 F.3d 1298, 1307 (11th Cir. 2009) (has been cited in the 6th Circuit, see *Bradley J. Delp Revocable Trust v. MSJMR 2008 IRREVOCABLE TRUST*, No. 16-3321 (6th Cir. 2018).

### B. Plaintiff's Well-Pled Allegations Support Entry of a Default Judgment

### 1. Count I: Failure to Warn

#### I. Proving Damages

In seeking a default judgment, Plaintiff bears the burden of proving damages. He may do so through documentary evidence showing the amount and calculation of damages; an evidentiary hearing is unnecessary, particularly where the evidence before the Court is not controverted. *CompuServe, Inc. v. Patterson*, 89 F.3d 1257 (6th Cir. 1996).

#### II. Duty Established

In order for Plaintiff to show damages, Plaintiff seeks to reiterate the duty of Taylor Swift, as mentioned in the Complaint, and give a more broader layout of the duty he argues Swift should have. A duty is comprised of multiple factors. The courts of Tennessee have held, "When the existence of a particular duty is not a given or when the rules of the established precedents are not readily applicable, courts will turn to *public policy* for guidance. Doing so necessarily favors imposing a duty of reasonable care where a defendant's conduct poses an unreasonable and foreseeable risk of harm to persons or property. When conducting this analysis, the courts

have considered, among other factors: (1) the foreseeable probability of the harm or injury occurring; (2) the possible magnitude of the potential harm or injury; (3) the importance or social value of the activity engaged in by the defendant; (4) the usefulness of the conduct to the defendant; (5) the feasibility of alternative conduct that is safer; (6) the relative costs and burdens associated with that safer conduct; (7) the relative usefulness of the safer conduct; and (8) the relative safety of alternative conduct." *Satterfield v. Breeding Insulation Co.,* 266 S.W.3d 347, 365 (Tenn. 2008). These seven factors can be applied to the current case.

Duty also depends, in part, on whether the victim "falls within the class of people who were foreseeably at risk of being harmed." *Smith v. Hope Vill., Inc.,* 481 F. Supp. 2d 172, 193 (D.D.C. 2007); *State Dep't of Corrs. v. Cowles,* 151 P.3d 353, 363 (Alaska 2006) (imposing a duty in a claim by the family of a decedent killed by a parolee, "only where officials know, or reasonably should know, that a parolee poses a danger to a . . . 'victim class'"). Comparatively, Plaintiff belonged to a class of people directly connected to Swift: her fan base and social media followers. Swift should have reasonably known that not having any disclaimers in regards to publicity stunts or statements done commercially (like a music video narration) or non-commercially (like crashing a wedding) could have harmed fans and followers like Greer who believed said stunts created representations of having similar success.

### III. Public Policy Supports a Duty.

As *Satterfield* mentioned, public policy is to be looked at to establish a duty. *Hanberry v. Hearst Corp.,* 276 Cal. App. 2d 680, 81 Cal. Rptr. 519 (1969) (magazine found liable for using incorrect stamp of approval, based upon public policy considerations). "Public policy...must be well defined and dominant, and is to be ascertained by reference to the laws and legal precedents and not from general considerations of supposed public interests." *Muschany v. United States,* 324 U. S. 49, 66 (1945). Several laws and precedents help create public policy for this case. Federal laws and regulations state that celebrity endorsers must use disclaimers with products

that they advertise and in social media postings related to any paid marketing or products that they endorse. See *In re Cooga Mooga,* 92 F.T.C. 310, 321 (1978) (Singer Pat Boone was scorned by the FTC for failing to make a "reasonable inquiry into the truthfulness" of his acne medication promotion).

Additionally, the Federal Trade Commission frequently warns celebrities of their social media content and advertising. *All 47 Celebrities Who Received Warnings From the Government About Their Instagrams.* Cosmopolitan (2017). (http://www.cosmopolitan.com/entertainment/celebs/a9624256/celebrities-list-ftc-warnings-sponsored-social-media/). In fact, according to FTC Endorsement Guides, if there is a "material connection" between an "endorser and an advertiser – in other words, a connection that might affect the weight or credibility that consumers give the endorsement – *that connection should be clearly and conspicuously disclosed,* unless it is already clear from the context of the communication." *FTC Staff Reminds Influencers and Brands to Clearly Disclose Relationship.* FTC.gov. (2017). (https://www.ftc.gov/news-events/press-releases/2017/04/ftc-staff-reminds-influencers-brands-clearly-disclose). The FTC Guides expressly state that use of an individual's name, signature, likeness, or other identifying personal characteristics, **even without accompanying verbal statements**, may cause consumers to believe that the entire message reflects the "opinions, beliefs, findings, or experience" of the endorser. These guides serve as great public policy to this case, as it shows influencers are already expected to disclose important information, to not mislead consumers or fans; those who follow after their words and image. In the commercial stunts and marketing that Swift did that influenced Greer, Swift had no disclosures. Her non-commercial publicity stunts lacked disclaimers as well.

Further, precedent, which is apart of public policy, has held that property owners and owners of products can be held liable for failing to warn of "hidden dangers". *Rich v. US,* 119 F. 3d 447 (6th Cir. 1997). Swift's publicity and image is her product and property. Courts have

described the identity of a celebrity as "the fruit of his labors and a type of *property*." *Uhlaender v. Henricksen,* 316 F. Supp. 1277 (D. Minn. 1970). Swift maintains her image and is allowed to sue for infringement of her image. In contrast, it should be expected that she is liable for any hidden dangers with her property, like other property owners. Swift induces fans and followers. She has an international influence. For the past several years, Swift has used her influence to donate to hurricane victims, donate to gun control groups and visit the sick and afflicted. Swift shies away from controversial topics such as politics and religion, in an effort to maintain her property and image. The hidden danger with her property and representations is the amount of sway and influence behind them, with no clarifications or disclaimers attached to the marketing or to her opinions, which can become fact. Given her level of influence, "statements of opinions" can be seen as "statements of fact". *Shirreffs v. Alta Canyada Corp.,* 8 Cal. App. 2d 742, 48 P. 2d 55, 58 1935). See also, *Not Just Words, But Hidden Promise: F.T.C. Studies Ad's Non-Verbal Message,* L.A. Times (Oct. 16, 1978).

### IV. Duty Extends to Third Parties

The 6th Circuit has held that it is not required for a plaintiff to have "a link such as privity, a bond approaching privity, or a fiduciary relationship with the defendant in order for a duty of reasonable care to exist." *Molecular Tech. Corp. v. Valentine.* 925 F. 2d 910, 916 (6th Cir. 1991). Without limiting its holding to a particular group, "the court reiterated the well-developed negligence rule that a defendant owes a duty of care to all those who are foreseeable as a potential class of injured persons…*and all those third parties who defendant knows will rely on the information.*" *Cleveland Indians Baseball v. New Hampshire Ins.,* 727 F.3d 633 (6th Cir. 2013). Examples abound of well-cited cases that have been used in the 6th Circuit to establish a duty to third parties: *Glanzer v. Shepard, 233 N.Y. 236, 135 N.E. 275 (1922)* (a seller of produce hired the defendant, a public weigher, to certify the weight of beans, which the plaintiff purchased. The defendant negligently certified the weight, and the purchaser, who was

harmed as a result, prevailed in a suit against the weigher); *Hempstead v. General Fire Extinguisher Corp.,* 269 F. Supp. 109 (D. Del. 1967) (a defendant placed its seal of approval on a fire extinguisher which exploded during use); *Hanberry v. Hearst,* which was cited in the Complaint.

### V. Defendant Taylor Swift May Be Playing a Character

As a persuasive factor in deciding Duty and Damages, it can easily be argued that Defendant Taylor Swift is playing a character. Publicity stunts Swift has done may have been done for show, that she doesn't actually mean anything she says, and thus warrants a disclaimer. This is readily proven by the bio on Swift's Instagram account, which reads: "The *old Taylor* can't come to the phone right now." **Exhibit B.** Below the statement is a link for tickets to her concerts, which clearly shows that her profile is a business account. This character argument is a similar one used as a defense with infamous conspiracy theorist Alex Jones, whose lawyer argued that Jones was a "performance artist playing a character" and that he didn't mean controversial statements that he had made. *InfoWars' Alex Jones Is a 'Performance Artist,' His Lawyer Says in Divorce Hearing.* NBC News. (2017). (https://www.google.com/amp/s/www.nbcnews.com/news/amp/ncna747491). If Swift is just acting and faking with her stunts, she needs to disclaim so. There are no disclaimers with any of her postings or stunts, etc.

### VI. Breach of Duty

With the duty established in the above mentioned points, Swift breached her duty by failing to use disclaimers. As shown in Exhibit B, there are no disclaimers in any of her posts or on her profile, as her profile is clearly for marketing her product, which is her music and her likeness.

### A. Commercial Publicity Stunts

There were no disclaimers in her commercial publicity stunts, like for the promotion of a movie, which she wrote the theme song for. She does a voiceover in a promotional for the movie and describes the protagonist's struggles of trying to get into the entertainment industry "inspiring". This spoken representation done for commercial marketing, swayed Greer to believe that Swift would be open to his efforts and story of struggles of living with a disability, trying to get into the entertainment industry. Her statements made it seem that she was open to all kinds of inspiring stories. **Exhibit C.** Similarly, with her music video, "*New Romantics*", Swift does a voice over, accompanied with a montage of waving fans, and says, "The fans are the best part of this tour." Clearly done for promotion of her music and product, this influenced Greer to believe that she would be welcomed to his efforts because he was a fan. **Exhibit D.** Since her statements were made commercially, in promotion of her movie and music, her statements of opinion became statements of fact.

## B. Non-Commercial Stunts

Swift has done many other publicity stunts, which weren't commercial in nature, but because they still created powerful representations and because they were posted to Swift's business profile, they swayed Greer and she breached her duty to have disclaimers, as they created representations of fact. One stunt was a photo of Swift who had been invited to a non-famous person's wedding and she accepted. This created a representation that Swift was open to having fans reach out to her. **Exhibit E.** On another occasion, which was carried by the news, Swift paid for her background dancer's niece's hospital bill. This created a representation that Swift was a kind, giving person. **Exhibit F.** On another occasion, Swift accepted prom invites from high school boys. Swift has had a long, documented history of swaying

and creating representations without any disclaimers cautioning anybody she may have swayed. Lack of commercial contexts with these stunts shouldn't matter because many non-commercial groups and persons have disclaimers with any charity that they do. For instance, with legal pro bono work, law firms will have criteria listed as to what they consider. Many charity organizations will have disclaimers with what they will help out with and what they won't.

Both contexts of commercial and non-commercial stunts show that Swift's words, actions and likeness have lacked adequate disclaimers to have prevented the harm Plaintiff has suffered. Swift breached her duty to have disclaimers, given public policy, precedent and the amount of influence that Swift has.

### VII. Swift Should Have Foreseen the Harm

Swift should have easily foreseen that with one hundred and eleven million followers on her social media, at least one follower would have been swayed by her commercial and non-commercial stunts and would have suffered harm by reaching out to her and discovering that her representations (verbal and non-verbal) were not what she intended them to be. Swift should have foreseen that disclaimers would prevent followers from suffering harm. Even with the chain reactions that followed, Swift should have foreseen that trolling is real and that there are those who prey upon others with unique views and said trolls would harass certain people.

One way that Swift could have foreseen harm is how people try "going viral", which means a person posts a video with the hopes that it gets a lot of views and clicks. Swift has noticed several people this way. Unfortunately, several people who try going viral, end up having their plights end up on troll sites; sites where people around the globe make it a sport to belittle and bully random strangers. Swift apparently advocates against bullying and so she is aware of trolling. This is what happened with Plaintiff. Swift should have foreseen that by not utilizing disclaimers, people would try getting her to see their plights and have their stuff end up

on troll sites. These are all harms that Swift could have easily foreseen. Swift's breach of duties listed are the proximate cause of Plaintiff's damages.

### VIII. Damages

The 6th Circuit has held that a negligent defendant is generally "liable for *all* injuries resulting directly from his wrongful act, if the damages were the legal and natural consequences of his conduct and might have reasonably been anticipated." *Cleveland Indians Baseball v. New Hampshire Ins.,* 727 F.3d 633 (6th Cir. 2013). Greer now presents all damages resulting from Swift's breach of duty. Many of the damages shown are lay outs and glances of damages, as that is what a default is for: is to show basic evidence to support his claims. *CompuServe, Inc. v. Patterson*, 89 F.3d 1257 (6th Cir. 1996). If a default judgement is rejected and a trial is instead warranted, discovery through subpoenas, statements and more pages of damages can show more in-depth damages.

### General Compensatory Damages:

### A. Economic Loss

Plaintiff has lost four years of his life being entangled in this mess and the representations of Taylor Swift. As stated in his Complaint, he relied on Swift's representations starting in 2014. He dedicated his time, money and fundraising efforts into producing a song ABOUT Taylor Swift; a gift made in reliance on her previous stunts with the hopes that he would have the same success that others had. It wasn't his best work, due to hiring fraudulent production companies, but it still showed genuine effort. **Exhibit G, Exhibit H and Exhibit I.** It's apart of having a disability that motivated Greer to undertake his efforts; of wanting to be accepted and helped by somebody so he could be so much more than the limitations that he lives with. His invigoration was sparked by being denied on a reality show and hitting walls with agents in the industry. Put simply: he saw her help others and saw her make commercialized representations that she would be open to such an ambition. At the very least, Greer hoped for acknowledgment.

Greer burned bridges with his college paralegal program director who gave Greer an ultimatum to choose between flattering a celebrity or being a legal professional. The program director thinks of Greer as unprofessional now and doesn't help him find jobs, as an alumnus of the college. Former college legal professors of Greer avoid him. Greer's first professional job, TraskBritt, fired Greer, in part, because they felt it was unprofessional for him to reach out to Swift. Charly Doe, office manager of the firm, terminated Greer. **EXHIBIT J.** Further, no other entertainment people want to work with Greer, due to these series of events. Agents show interest in Greer and then they go silent, like they discover this horrible person, when Greer isn't a bad person. Greer is possibly blacklisted from Hollywood because of this entire incident. Economic damages also extend to the next point of damages. Economic damages are recoverable in a negligence third party action, per Circuit case law. *Id.*

### B. Reputational Damages

Greer's largest point of damages is a ruined reputation. Besides being let go from jobs and ruining his academic connections early on in relying upon Swift's representations, Greer's efforts began to catch the attention of bullies and cretans, commonly referred to as "internet trolls", who began to harass Greer through social media, calling him "too ugly to see Taylor". They began creating posts on Reddit of Greer through the "Sad Cringe" section. One of the first posts created of Greer on Reddit was a post saying, "The only thing Russell Greer and Taylor Swift have in common are that they both play victims." **Exhibit K.** The defamation only increased thereafter. Since his efforts caught the attention of trolls, they use any sort of misstatement Greer makes against him or they fabricate events that never happened or they exaggerate who Greer is. The trolls began harassing Greer's place of employment, Patent Law Works, and started emailing lies about Greer. The Human Resources manager wouldn't hand over evidence for this Motion, but Plaintiff declares under penalty of perjury that one email sent to the HR manager, as told to Greer by the manager, was an email that had a picture of a phone

that had pornography on it, which said, "Russell has been looking at porn on his work phone." The email was a lie because Greer didn't have a work assigned phone. Anonymous people had set out to destroy Plaintiff Greer. If evidence or testimony is needed in the form of a subpoena, if this proceeds instead to a trial, it was told to Greer that hundreds of emails were sent to his former HR manager, with lies about Greer. The manager, Jennifer Nakao, even told Greer that he "had made some enemies." Greer was bewildered because he hadn't done anything wrong.

Around this time, Taylor Swift's agents were negligent with handling Greer's musical gift. They believed that Greer was trying to get Swift to have her do a song. They somehow refused to understand that he was trying to give her a gift — the same kind of gift she had received in the past. What is important to understand is that this gift wasn't a cover of one of Swift's songs; it wasn't an instrumental version of her song; it was an original song that was meant to be a gift that talked about how Taylor's music had helped him. They mentioned contracts and unsolicited song submission policies and how Swift writes all of her own music, which is irrelevant and proved negligence because Greer was trying to give a gift, thus none of that mattered because there's a difference between a gift for her to have and a song for her to do. At the very least, he wanted his story of trying to overcome his disability passed on. Somehow, the agents didn't understand this, and for some reason, it brought out trolls who embarked on a mission to destroy Plaintiff Greer. **Exhibit L.** It would have killed Greer to know that he gave his all after relying on Swift's representations and that she never saw it, especially in light of the harassment. So Greer looked for other ways to get it to Swift: he contacted associates of hers, her record label and her IP law firm. Nobody seemed to want to help him.

After studying cases on Google Scholar, Greer found a case for "vicarious liability", which stated that suing under vicarious liability "reflects the likelihood" that an employer will work a problem out. *The Restatement (Third) of Agency 2.04.* With Swift's representations, she portrayed that the likelihood of success of a problem being resolved would be realistic if she saw

said problem. This was reinforced by **Exhibit F:** her dancer showed her a problem that he had and she fixed it. Also, Swift has been the subject of ridiculous lawsuits and she has responded to several lawsuits. So Greer relied on this and sued her for the conduct of agents, as explained in the Complaint. When Greer told one of his friends what he was doing, Greer began crying because he didn't know of any other way that she would see his efforts. Greer filmed two videos of himself and sent to Swift's agents, explaining the purpose of the lawsuit. The second video was made to clarify misstatements that he had made in the first video. Also, the lawsuit was citing a state statute that required registered agents to act in the same competence and manner that other agents would act because Greer believed that any other agents would have taken the time to learn that it was a gift Greer was trying to pass along and not a song for her to do. *Utah Code 75-9-114(2)(C).* Thus, the lawsuit was not frivolous.

Weeks later, Swift's lawyer in Utah, Greg Skordas, wrote a motion to dismiss and according to the legal document, Taylor Swift was perturbed by Greer. Greer was crushed. This is another example of Swift's representations leading Greer on and causing him to engage in action based on her statements and likeness. Without these representations that Swift has made, there would have been no "likelihood" of a problem being resolved, thus the lawsuit would have never been filed; Greer would have never gone to extremes to try fighting for the efforts he worked on, and Greer would have no reason to have had complaints with the agents. Ironically. Swift slandered Greer for him relying on her representations. Greer has to take the words in the motion as true, as the lawyer and other professionals wouldn't have lied about words Swift said. **Exhibit M.**

As iterated in the Complaint, that previous lawsuit does not preclude claims here, as Greer is arguing claims based on Swift, not her agents, which is what the small claims lawsuit argued. "Collateral estoppel prevents relitigation of factual matters that were fully considered and decided in a prior proceeding. Thus, collateral estoppel operates to prevent repetitive

litigation." *Tipler v. E. I. du Pont de Nemours and Co.,* 443 F.2d 125, 128 (6th Cir. 1971). No arguments for "duty to warn", failing to warn or anything based on Swift's conduct were ever brought forth in the lawsuit. Also, the claim was filed in small claims justice court, not a state or federal court, so the judgement (which was based mostly on lack of jurisdiction) wouldn't affect this case even though no similar claims are brought here. "…Requires a federal court to accord a state court judgment the same preclusive effect that the judgment would have in a state court." See *Marrese v. American Academy of Orthopaedic Surgeons*, 470 U.S. 373, 384, 105 S.Ct. 1327, 84 L.Ed.2d 274 (1985). Justice court is different than State court and thus no preclusion applies.

Lastly, rulings are found to be invalid when it is found that judges have a bias. Several witnesses saw, and are willing to attest to if this current case goes to trial, that Judge Havas of the small claims court of Salt Lake City was hostile and intolerant to Greer. The judge didn't let Greer show any evidence. The judge laughed at Greer. The judge rolled his eyes at Greer. The case was very embarrassing because nobody understood the vicarious arguments even though Greer presented solid claims of the agents being obtuse with handling the communication. Greer had evidence of emails telling the agents how he thought it was unfair for her to accept gifts from random people, but not from him, which proves he was trying to give her a gift and not that a song for her to do. **EXHIBIT Z.** The judge wouldn't let Greer show this. The evidence would have helped show what Greer was trying to do and display the agents' negligence and shown that Swift was liable for their negligence because she failed to work with them on instructions on accepting gifts. There seemed to be communication conflicts between the agents and Swift.

Newspapers and news stations around the country and the globe picked up Greer's lawsuit and purposely smeared Greer. The news purposely omitted the "vicarious liability" arguments and failed to mention Greer's disability or other motivating factors that would have not painted Greer into a raving lunatic. But the newspapers were fueled by Swift's slander in the motion and the hostile tone that the lawyer had. A newspaper in the United Kingdom called

Greer "entitled". A Utah News station smeared Greer as "frivolous". **Exhibit N.** The news refused to correct statements they had published or even refused to reach out to him for comment, which furthers the smear. They put in false information about Greer, such as he was suing her to go on a date. *Nowhere* in the lawsuit was there a mention of a date, However, in the first video Greer sent, he made a misstatement and said that he worked on the song with the hopes he could have similar success as other people, such as going on a date. **He felt that this was unclear and so he** made a **second video** which clarified what he meant. The news didn't mention this and deliberately put that lie in their newspapers, which is defamation. The hostile news attracted more trolls, who put Greer onto various websites.

One website, Kiwi Farms, is a troll site mocking those they deem to be weird. They refer to people as "Lolcows". **Exhibit O.** Said site has over 100 pages on Russell Greer. The troll sites made the incident worse than it was. The owner of Kiwi Farms, Joshua Moon, who goes by the name "NULL" on the website, has refused to comply with requests to remove Greer from the website. The site has gone from mere defamatory statements to putting Greer's copyrighted material on that site, publishing Greer's addresses, phone numbers, his family's contact info, his friends' info. Under the *Communications Decency Act,* site owners are not liable for third party conduct, a fact NULL proudly touts. Even if Greer could sue NULL, the site owner doesn't have the monetary value to compensate for the harms Greer has suffered. This site engages in a practice of malicious harassment.

Several people have tried coming to Greer's defense on that site, only for them to be blocked and to have a message sent to them saying, "You're stuck here forever." This site has had users create fake profiles of Greer and they send him friend requests. Some profiles created have been: "Shit lips Greer", "Rat Face Russell Greer", another profile had put Greer's face on the guy grabbing Taylor Swift's butt. **Exhibit P.** Some of these users have impersonated famous people and stole personal, intimate photos of Greer, after coaxing Greer into believing he was

talking to said celebrity. Another person left a voice message on Greer's phone and pretended to be Swift's record label. One person pretended to be pop star Katy Perry and stole intimate items of Greer's. They later posted said items on troll platforms. **Exhibit Y.** Others have hacked Greer's accounts. Other users created fake profiles of Greer and began impersonating him online. They created fake emails that purported to belong to him and began harassing places and people with those fake email accounts. It's a never ending stream of harassment. Greer has contacted the police and the district attorney of Salt Lake and they never do anything.

As stated in the complaint, from October 2017 to June 2018, Greer has been fired from 5 jobs due to the trolls harassing Greer's employment. Greer tried publishing a book on his actions to try fighting the slander, but the trolls purposely gave it bad reviews. Because of the bad reviews, Greer can't market the book. Greer has been robbed of his ability to have the truth told, which is one reason why this current lawsuit was filed. **Exhibit Q.** Trolls have in groups published defamation onto review websites such as a site called, MyLife. 115 random reviews painted Greer as a horrible person. One random review said, "I wouldn't be Russell's friend." Another said, "Don't hire Russell Greer." Another review, "Russell is delusional and mentally ill." These reviews were all left around the same date of 11/20/2017, which shows that it was a coordinated group effort and not sporadic harassment. **Exhibit R.**

They have published Greer's number onto phone number review websites and leave bad reviews on his number. Simply blocking and requesting to delete negative reviews and trolls doesn't work because he blocks one and 12 new trolls come at him. No high quality jobs want to hire Greer because of the false reputation he has been given. He has applied to over one thousand jobs in a year and only 4 have interviewed him. **Exhibit S.** Greer has been evicted and essentially homeless because of the slander. **Exhibit T.** Greer has been unemployed and has had to collect unemployment checks just to eat. **Exhibit U.**

Reputational damages are recoverable in a negligence lawsuit. *Kennedy v. McKesson,* 58NY2d 500, 448 NE2d 1332 (1983) (Defendant anesthetic company negligently repaired machines; Plaintiff accidentally killed a patient with the machine. Plaintiff was able to recover for reputational damages).

### C. Physical Injury

Plaintiff suffers from depression and anxiety. He has suffered with both since his teenage years. Discovering trolls harassing him and discovering that Swift thought of Greer's efforts as "troubling" has caused plaintiff to attempt to kill himself. Also, Greer's depression and anxiety from this incident frequently causes Greer's head to tighten, to which he has to take medicine for. Because Greer continues to lose employment over this, he can't go to a doctor and get his head examined to make sure he doesn't have anything else going on. Also, one night as he was walking home, he had a truck toss a firecracker at him, which caused burns to his legs. Greer has been a target of harassment. On another time, Greer received a package that had powder in it. He became ill from the package. It was later deemed to be non-lethal, but it made Plaintiff lightheaded. His former roommate Paul Lopez witnessed the ordeal, but didn't want to write an affidavit for fear of trolls coming after him too.

### D. Fear of Violent Assault

Greer has had several incidents stemming from this ordeal, which have made him fear for his life. Several times he has been in the grocery store and has overheard people say, "That's the guy who sued Taylor Swift" and he is afraid they're going to attack him. Another incident, a woman actually came up to him and berated him over the lawsuit. Greer has received strange packages in the mail, as noted above. One package called Greer a "narcissist". **EXHIBIT V.** Another time, a group of strangers shouted harassment at Greer as he walked on a sidewalk. Another time, a lady shouted at him, "I should sue you for being ugly!" With Greer's address on the troll sites, he is afraid that he is going to be killed. This is a reasonable fear, based on the

2017 New Mexico High School shooter, who was a member of Kiwi Farms. Before the shooter went on his rampage, he asked NULL when he was going to start shooting people. **EXHIBIT W.** Greer is afraid for his family's safety. Whenever Greer eats in public places, he sits facing windows and exits for fear that he will be attacked from behind. When Greer sleeps, he places a heavy object in front of his bedroom door, so that it can't be opened because he fears he will be killed in his sleep. The 6th Circuit allows for one to recover for fear of harm happening, as a distinct claim from emotional injuries. *Sterling v. Velsicol Chem. Corp.,* 855 F.2d 1188, 1205-07 (6th Cir. 1988) (class action for fear of contracting liver and kidney disease and cancer due to defendant corporation's dumping of hazardous chemicals in water supply).

### E. Loss of Family Relationship

Greer has a twin sister that he was separated at birth from. Just barely five years ago, he made contact with his birth family. He was barely building a relationship with them when the trolls went to the liberty of digging through everything in his personal life and began harassing his sister with fake email accounts. His sister thought that it was Greer who was harassing her, when it wasn't. Now his birth family wants nothing to do with him. His birth family is the key to knowing about his future, such as if he will live long in age, if his family has any history of diseases, etc. They are his only blood relatives and it has been forever ruined because of this entire ordeal.

### F. Emotional Damages

Greer reiterates previously mentioned damages to fit in this claim. Greer has suffered fear for his life. He has suffered loss of relationship. He has a ruined reputation. He has damages stemming from knowing that Swift continues to interact with random fans while she shafted him after relying on her representations. Those interactions are essentially pouring salt into open wounds. Greer can't sleep at night due to his anxiety. Greer is constantly worried about losing further employment. These are recoverable damages.

### G. Calculation of Damages

Plaintiff estimates his general compensatory damages to be around $22,69,950.00 dollars. Plaintiff comes to this conclusion by estimating that he will live for another 50 years. As a paralegal graduate with an Associates Degree and legal work experience, the *National Association of Legal Assistants and Paralegals* estimates that those who hold an associate's degree in paralegal studies earned an average salary of $53,399 per year. *What Can My Salary Be with a Paralegal Associates Degree.* Chron.com. (2018) (https://work.chron.com/can-salary-paralegal-associates-degree-25487.html). If Greer being fired or unable to find a job due to Swift failing to warn is going to be a consistent pattern, Greer is entitled for lost future wages and would multiply 50 by $53,399. The total would be $2,669,950. As for reputational damages, several judgements have found those with reputational damages to be upwards of $20 Million dollars. *How much is a damaged reputation worth?* Medical Economics. (2003). (http://www.medicaleconomics.com/practice-management/how-much-damaged-reputation-worth). Greer asks for 20 million dollars for a ruined reputation and mental anguish and fear of violent assault and loss of family connection. Altogether, Greer seeks compensatory damages of $22,69,950.00

Also, Greer doesn't sue the people and organizations involved in the chain of events for damages because Joshua Moon is unemployed and so suing him would essentially be as effective as not suing him. Further, federal law protects Moon as a site owner, although he has done plenty of harassment himself, such as publishing requests onto his site of Greer wanting stuff removed. **Exhibit A1**.

### H. Punitive Damages Will Not Be Sought

In federal diversity cases, the legal standard is that the laws of the forum state are to be followed. The forum state in this case is Tennessee. *Tennessee Code 29-39-104* holds that punitive damages can only be found by a jury if it is determined a defendant acted recklessly.

Greer initially stated in his complaint that he wanted punitive damages to bring the amount to 100 Million. Greer wrote that before he was aware of the statute that has been cited. Therefore, Greer will not seek punitive damages, as he can't prove recklessness on behalf of Swift. Greer can only prove negligence, which he has done.

### IX. Entry of the Proposed Default Judgment Is in the Public Interest

This circuit has held that in certain civil actions, the public interest should be weighed. *Mason County Medical Ass'n v. Knebel,* 563 F.2d 256 (6th Cir. 1977). The relief Greer seeks is in the public interest. Although the damages he claims are in a private action, the defendant is a public figure. The action speaks for itself that Swift nor any of her representatives chose to respond to this lawsuit; that none of them came forward to explain why Swift, an internationally famous celebrity, shouldn't have to use disclaimers with her publicity stunts, when public policy and precedent says otherwise. None of them have shown any sympathy towards Greer and the damages that he has claimed.

The public does have an interest in this. A few months before commencing this action, a person messaged Greer and told him that she felt empathy for Greer's plight. She told him that her cousin did something similar as Greer. Her cousin was in a car accident and wanted to meet a certain celebrity. This person's cousin went to great efforts to have said celebrity see their efforts. Trolls saw the cousin and put it on websites, mocking the cousin. For a while, the family was afraid that he would kill himself because the taunting was too much. **Exhibit X.** It's apparent: others have suffered similar harms doing similar efforts. In a world that idolizes celebrities, such disclaimers should be used to avert hidden dangers. See, Leets, L., de Becker, G. & Giles, H. (1995). *Fans: Exploring Expressed Motivations for Contacting Celebrities.* Journal of Language and Social Psychology, 14 (1–2), 102–123; *Social Influence of an International Celebrity: Responses to the Death of Princess Diana.* Oxford Academic Journal of Communication. (2003).

In matters similar to the one at hand, courts have concluded that "the court's authority to exercise full equitable powers is especially appropriate in a case like the one at bar." *FTC v. Gem Merchandising Corp.,* 87 F.3d 466, 470 (11th Cir. 1996). A judgement against Swift would be sweeping. She's considered one of the top artists currently. If she were found to be liable and in default, the ramifications would be swift in and of itself: other celebrities would change how they do stunts. See, *Any Resemblance to Persons Living or Dead: Film and the Challenge of Authenticity*. Stanford.edu. (2016). (https://web.stanford.edu/dept/HPS/HistoryWired/Davis/DavisAuthenticity.html) (talks about how the "All Persons Fictitious" disclaimer came to be, which was created in response to a libel lawsuit from 1932. The disclaimer is now used by every major movie company).

Plaintiff would be prejudiced if a default judgment were not entered because, without a final judgment, there would be nothing preventing future harm that could befall others who rely on Swift's actions. In addition, without a judgment for monetary relief, Plaintiff would be unable to confidentially move on with his life, based on how ruined and fractured it currently is. A judgement would save Plaintiff the costs of litigation, as it's apparent Swift and her attorney do not care about the case. Finally, the failure to award default judgment here would create a perverse incentive for future defendants in similar actions, by rewarding Defendant's failure to answer or defend this action. These considerations weigh heavily in favor of entering the Default Judgment here.

### X. CONCLUSION

For these reasons, Plaintiff respectfully requests that the Court enters the proposed Default Judgment against Defendant Swift.

Respectfully submitted,

DATED:  September 6th, 2018

Respectfully submitted,


By:

Russell Greer
Pro Se Litigant
/rgreer/



## CERTIFICATE OF SERVICE:

I certify that on September 6th, 2018, a true and correct copy of PLAINTIFF'S MOTION FOR
ENTRY OF DEFAULT FINAL JUDGEMENT was emailed to the following:

William Briggs, counsel for defendant, at: wjbriggs@Venable.com

A copy will also be physically mailed to his office addresses:

William Briggs
Venable LLP
2049 Century Park E
 #2300
Los Angeles, CA 90067

# EXHIBIT A


## Request to waive service

July 15, 2018 at 7:01 PM
⌁ Found in Gmail Sent Mailbox

Mr. Briggs,

Please find attached my document to waive service of summons to save me cost expense. Since you are her attorney, and are thus a representative that can get this to her, you accepting service will suffice. Please sign the Waiver and scan back to me.

Thank you.
Russell Greer

pdf

Greer v. Sw...final (1).pdf
256 KB

                    

# EXHIBIT B



# taylorswift

• • •



**219**
posts

**111M**
followers

**0**
following

**Message**     👤✓   ▼

## Taylor Swift ✔

The old Taylor can't come to the phone right now.

taylor.lk/repEvents

Followed by **j_st_n.case**, **amberleyy_xo**, **sammedina7** + **87 more**

⊞     ▢     👤



🏠    🔍    ⊕    ♡    👤

# **EXHIBIT C**





**SEP**
**29**
## Taylor Swift - On Tour
Houston, TX · NRG Stadium

**TICKETS**

⌄   View all upcoming shows

## Taylor Swift - New Romantics

81M views

             


754K          34K          Share          Download          Save

   **Taylor Swift**
30M subscribers

 SUBSCRIBED   

Up next                          Autoplay



4:31

**vevo**

Maroon 5 - Girls Like
You ft. Cardi B
Maroon 5 · 786M views



Mix - Taylor Swift
New Romantics

# **EXHIBIT D**



## One Chance -- EXCLUSIVE First Look with Taylor Swift -- Regal Movies [HD}

109K views

 
1.5K


4


Share


Download


Save


**Regal Movies**
121K subscribers


▶ SUBSCRIBE

Up next

Autoplay


3:09

**Emoji News: Taylor Swift Wins 8 Billboard Awards -...**
The Late Late Show with J...
203K views



**Relaxing Sleep Music: Deep Sleeping Music, Re...**
Soothing Relaxation
Recommended for you

# **EXHIBIT E**



CELEBRITY

# Taylor Swift Surprises Fan with a Special Performance of 'Blank Space' at His Wedding (and Gave Him a Handmade Gift)

   



# EXHIBIT F

×  **MailOnline**
★ ★ ★ ★ ☆
FREE - On the App Store          View

 **TV&Showbiz** 

# 'All of us are praying for you': Taylor Swift donates $50,000 to her backup dancer's baby nephew who is battling cancer

By Iona Kirby For Dailymail.com
18:46 EDT 30 Sep 2015, updated 14:09 EDT 01 Oct 2015



ADVERTISEMENT

**Get the MailOnline App**          Download on the **App Store**
Free and easy to use

# EXHIBIT G



# EXHIBIT H

 
    🔒 kickstarter.com    



"I Get you, Taylor Swift" and Other Feel Good Pop Music.

Post update
Kickstarter Live
Dashboard
Backer report
Messages
Reward surveys
Collaborators

Resources

Creator Handbook
Campus
Creator FAQ
Tips blog
Fulfillment resources

...ift" and
...p Music.

...eator

...n produce demos
...ift and others.

# Created projects

A place to keep track of all your created projects

## Unsuccessful

These projects may have not been fully funded this time around but you could always try and relaunch. **Looking for advice?** Try visiting Campus — a new space where successful creators share their knowledge.



**"I Get you, Taylor Swift" and Other Feel Good Pop Music.**

View project

**Funding Unsuccessful**
Project ended on 11/10/2015

Case 3:18-cv-00394 Document 10 Filed 09/14/18 Page 39 of 91 PageID #: 79

# **EXHIBIT I**

# I Get You

### (Song for Taylor Swift)

Russ Greer                                             Russ Greer





# **EXHIBIT J**



# TRASKBRITT



# Charly Doe, MBA, CLM
## Executive Director

**Email:** cdoe@traskbritt.com
**Phone:** 800.900.2001

801.994.8747

# EXHIBIT K



# googie.com

reddit.com  

 **OPEN IN APP**





**Visit Community**

r/niceguys

Feb 5, 2017, 10:22 AM

If there's any resemblance between him an
Taylor Swift, is that they both play the victim
all the time. This girl's crime? Unfriend him
on FB.

Case 3:18-cv-00394   Document 10   Filed 09/14/18   Page 45 of 91 PageID #: 85

09/16/2017, 6:37 PM

NO ONE CARES.
HAHAHAHAHAHA YOU ARE
SUCH A FLOP MAN! IF U
THINK TSWIFT RUINED YOUR
LIFEEEE. BOOOOOO! YOU
DIE BTCH HAHAAHAHAH



ıll Verizon 🛜    9:56 AM    ⊕ ✳ 59% 🔋 ⚡

08/27/2017, 11:02 AM

## https:// encyclopediadramatica.rs/ Russell_Greer

### Attachment Unavailable

This attachment may have been removed or the person who shared it may not have permission to share it with you.



You're a fat sack of shit.



0:01                                                      8:19

## Warning if you don't 'date' Russell Greer he will sue you

48 views


2


1


Share


Save


Add to

 **christopher lockery**
No subscribers

 SUBSCRIBE

Up next                                    Autoplay


9:20

**Word Salad**
christopher lockery ·
No views


4:50

**Do You Believe In Life After Love?**
Sukairi ·
Recommended for you

# EXHIBIT L

Found in All Mail Mailbox

**Jay Schaudies**      9/13/16
To: Russell   Cc: Robert      Details



Dear Mr Greer,
After you had sent some additional correspondence about your music, I called this morning to speak to you. I got your voice mail and left a message explaining some of the legal reasons why neither we nor Taylor can receive, open or forward any unsolicited material.

I truly do wish you the best in your efforts. I hope you and your songs find the right audience.
Sincerely,
Jay

Jay Schaudies
Sent from my iPhone

See More from Jay Schaudies



# Jay Schaudies

Taylor Swift Agent
September 13, 2016 at 9:47:34 AM

   

home      home

**From: Email My**

**To:** Jay Schaudies          Hide 

Robert Allen

**Misunderstanding In Yesterday's Email. I Am Trying to Forward A Fan Made Song To Taylor That Cost Me $400.00 To Produce. Please Forward To Her. I Am Not Trying To Pitch A Song. If the song is not forwarded, it will have been a waste of time and money :( I only want her to smile :) I don't know how else to give to her so that's why I contact you two.**

July 19, 2016 at 5:45 PM
🗁 Found in Gmail All Mail Mailbox

### Dear Jay and Robert:

**Jay Schaudies**

To: Email My

7/18/16

Details



Dear Sir,

Taylor writes all of her own music and none of us can or will accept unsolicited works. This will not be forwarded or opened.

I wish you well in your endeavors

Jay Schaudies
Sent from my iPhone

See More from Email My

# EXHIBIT M

his admiration of Ms. Swift to an unnecessarily invasive and troubling level, for her and increasingly for her immediate family and senior management team.

Plaintiff alleges in July 2016 he began contacting Jay Schaudies and Robert Allen, Ms. Swift's management team, and attempted to provide them with copies of his music to pro Ms. Swift. According to Plaintiff, Mr. Schaudies and Mr. Allen would not forward his son Ms. Swift. Mr. Schaudies and Mr. Allen allegedly informed Plaintiff that they had a "No Unsolicited Submissions" policy, which meant Plaintiff's unsolicited submissions would forwarded to Ms. Swift. Following these responses, Plaintiff attempted on multiple occasi contact her parents and her brother as well, via email, social media and unsolicited gifts to personal residences. Plaintiff alleges he has suffered damage as a result of Ms. Swift, thro Mr. Schaudies and Mr. Allen, refusing to accept his unsolicited submissions.

When Ms. Swift, her management, and her family were not responsive in the manner Plaintiff desired he filed the instant action alleging $7000.00 in damages for claims of neg and intentional infliction of emotional distress against Ms. Swift under the doctrine of Respondeat Superior. Importantly, Plaintiff alleges no actual contact from or conduct on t of Ms. Swift. In addition to filing this action, Plaintiff posted a video online announcing h

# EXHIBIT N




**MailOnline**

★ ★ ★ ★ ☆

FREE - On the App Store

View

✕

 Daily **Mail**.com    **News**    

# Utah man sues Taylor Swift after her agents 'stonewall' his efforts to make music with her

By Kaileen Gaul For Mailonline

05:18 EDT 08 Dec 2016, updated 13:48 EDT 08 Dec 2016



ADVERTISEMENT

+5

 
🔒 dailymail.co.uk    ↻

✕    **MailOnline**
★ ★ ★ ★ ★
FREE - On the App Store    View



Russell Greer from Salt Lake City blames Swift's agents for not forwarding his music to her.

He believes he is entitled to the singer's attention.

Mr Greer was allegedly told multiple times the Shake It Off songstress had a 'no unsolicited mu ADVERTISEMENT on policy.

A j
ar

  

# **EXHIBIT O**

the past two years I have been campaigning to shut down Kiwi Farms, a site run by Joshua Conner Moon — formerly of Pensacola, Florida.



# Kiwi Farms
@KiwiFarms

Gossip and exploitation of the mentally handicapped for amusement purposes.

📍 Ruckersville, VA

🔗 kiwifar ms

— Kiwi Farms is run by paedophile sadist Joshua Conner Moon and exists to harass the disabled. Click for full size.


Text Message
Today 1:59 PM

Russel you piece of shit.
All your information
including phone, home
address, work address,
etc. Will be published to
the trolls unless you
unblock me.

What??? Who is this?

It is Zig.

Sorenson was very
helpful in providing me
everything I need to
know.

Why you deactivate
your Facebook Russell?

   Text Me... 

# **EXHIBIT P**



## Verizon LTE · 9:20 AM · ⊕ ⚡ ✳ 81% ▭

September 24, 2017
10:10 PM

‹ Edit

# Moebius Lipschitz


Add Friend

Follow


Message


More

About · Photos · Friends

 **Featured Albums** · All Albums





Me: Do you follow Taylor Swift?
Guy: Yes
Me: On Instagram?
Guy: No

# Greer Shitlips Rusty


Add Friend


Message


More

About          Photos          Friends


**Featured Albums**                    All Albums


**Photos** • Nothing to Show

   

September 25, 2017

‹        12:08 PM        Edit



# Russhole Shitlips Greer

Add Friend      Follow      Message      More

**About**      **Photos**      **Friends**

**Photos** Nothing to Show






# **EXHIBIT Q**

# WHY I SUED TAYLOR SWIFT

## AND HOW I BECAME FALSELY KNOWN AS FRIVOLOUS, LITIGIOUS & CRAZY

**Based on the true event**



## BY RUSSELL GREER

Case 3:18-cv-00394   Document 10   Filed 09/14/18   Page 66 of 91 PageID #: 106

# EXHIBIT R

# 670 People are Searching for You

Refine Results   Clear filters   ⌄

## ACTIVITY SUMMARY

| 1 | 10 | 634 |
|---|---|---|
| VIEW LAST WEEK | VIEWS LAST MONTH | VIEWS LAST YEAR |



## Anonymous

LOCATION
Columbus, OH

SOURCE
Mylife

*Searched for you on
09/03/2018*



# Russell, Your Reputation Score is
## 2.675

**Show Reputation Scores**

# EXHIBIT S

# My Jobs



Next Steps                          10  ⟩

Saved                               21  ⟩

Applied          1117                   🔴

Interviewing                         4  ⟩

# **EXHIBIT T**

# NOTICE TO TERMINATE TENANCY

**October 3, 2017**

Tenant(s):
Russell Greer
3306 East Del Verde Ave
Salt Lake City, Utah 84109

## TO TENANT(S) AND ALL OTHERS IN POSSESSION OF THE PREMISES LOCATED AT:

3306 East Del Verde Ave
Salt Lake City, Utah 84109

**PLEASE TAKE NOTICE** that your month-to-month tenancy under which you hold the possession of the herein described premises is hereby terminated as of the date **THIRTY (30)** days after the service of this **NOTICE** upon you. **YOU ARE HEREBY** required to quit and surrender possession thereof to Jessica Hirshberg on or before the date of **NOVEMBER 3, 2017.** Rent will be prorated for November if not vacant by October 31, 2017. Failure to do so will result in forfeiture of the lease and/or rental agreement and will institute an Unlawful Detainer lawsuit against you to recover rent, damages and possession of said premises.

THIS IS INTENDED AS A THIRTY (30) DAY NOTICE FOR THE PURPOSE OF TERMINATING YOUR TENANCY. THIS NOTICE IS IN ACCORDANCE WITH UTAH CODE, TITLE 78B, CHAPTER 6 § 802(b)(i).

LANDLORD RESERVES ALL THE RIGHTS AND REMEDIES PROVIDED UNDER THE RENTAL AGREEMENT AND UNDER APPLICABLE LAWS OF THE STATE OF UTAH INCLUDING BUT NOT LIMITED TO DAMAGES FOR UNPAID RENT OR PROPERTY AND NOTHING IN THIS NOTICE MAY BE CONSTRUED AS A WAIVER OF SUCH RIGHTS AND REMEDIES.

By: _Jessica Hirshberg_

Jessica Hirshberg

*3306 East Del Verde Ave, Salt Lake city, UT 84109*

*(801)450-3904*

# **EXHIBIT U**

# Current Claim for RUSSELL G GREER

**Type:** Unemployment Insurance

**Status:**
Eligible

**Weekly Benefit Amount**
$264.00

**Last Deposit Date**

**Begin Date**
Feb 25, 2018

**Maximum Benefit Amount**
$6,864.00

**Last Weekly Claim Filed**
Mar 24, 2018

**EndDate**
Feb 23, 2019

**Remaining Balance**
$6,713.00

**Work Search Requirement**
4 weekly

***\*Your claim will stop at the end of the benefit year. Any remaining balance cannot be carried over to a new claim.***

# Claims

# EXHIBIT V



# **EXHIBIT W**



would clearly have cast suspicion on me – until Moon was goaded into admitting in a post on Kiwi Farms that he sent it (article with links and evidence). After this admission there were no more threats to public buildings. Until the real murders on 7th December.

Atchison and Moon were acquainted and chillingly 3 days before going on his rampage, Atchison posted on Kiwi Farms under his username, "FuckYou" asking how long before Moon would do so (archive).



how long until you conduct a mass shooting
how long until you conduct a mass shooting
Profile Post by      for      , Dec 4, 2017

Kiwi Farms member Williams Atchison under his username, "FuckYou" asks his friend Joshua Conner Moon, "Null" how long before he conducts a mass shooting.

It is important to understand that Kiwi Farms' owner has called for the extermination of Jews and Muslims, and

 

# William Atchison



**Born**      March 17, 1996 *(disputable, dox suggests March 17th 1996[1], forum account suggests 1993[2])*
New Mexico

**Died**      December 11, 2017 (age 21-24)
New Mexico

**Cause of death**   Suicide after murdering two students

**William Emsgtret Atchison** was a user 🖉 of Kiwi Farms who garnered infamy and mockery in the community for his involvement in the Aztec High School shooting. On december



FuckYou

Fuck You

Male, 36, from Fuck You

*Fuck You*

Profile Page

Member Since: **Sep 6, 2016**   Messages: **137**   Ratings
Received: **+1,643 / 111 / -143**   Trophy Points: **100**

# EXHIBIT X

I just wanted to say I saw your story and I found it super upsetting. My cousin back home was paralyzed in a car accident when he was young and has a similar story to yours. He put a ton of effort into creating a song + video, and the video centered on his struggle as a disabled person. He sent the song/video out to a few celebrities and some people on Reddit's cringe subreddit found it. They harassed him in droves and he ended up deleting it all and we were scared he was going to kill himself for a while...this was a few years back but I just wanted to let you know that you'll be ok and lots of people go thru the same thing! He even found a support group for people who

    Aa   

# Exhibit Y



# Exhibit Z

•ıll Verizon 🤶      10:38 PM      ⓐ ✈ ⚡ 15% ⬜

⟨ **1**      **5 Messages**     ∧   ∨
Don't Have the Godly Loki Looks, Bu...

christening at the dock, the knight who has fought so valiantly to get here at this point of his journey is still waiting for his hero's reward.

What may seem as me being stubborn or level headed (which I'm totally not. I'm actually quite content and happy right now and grateful you took time out of your busy day to call me), is actually me just wanting to be treated equally. I'm a paralegal. I think through problems and I analyze. I started on this quest to impress her and write music for her after seeing her accept prom dates; wedding invites; going to charities; visiting kids in hospitals. While all of that was sweet of Taylor to do, none of it benefited her in return. And then I saw her do collaborations with other artists so thus a confusing rule is created: her contract won't allow her to accept material to be pitched to her, but the contract allows her to work with others, or to do music for

# Exhibit A1

s: **Josh**

owner

[1][2]

called Kiwi

defame

ebsite

*y exist*

York

*cializes in*

*eing*

*e way"*[4].

which

and in

als. At

family

|



## Joshua Conner Moon

| | |
|---|---|
| **Born** | 19/12/1992 |
| **Residence** | Pensacola, Escambia County, Florida �&zwnj; |
| **Nationality** | United States |
| **Other names** | Josh Moon, Null, Ichverbot, Ibanx (pseudonyms) |
| **Citizenship** | United States |
| **Occupation** | Unemployed |
| **Organization** | None |
| **Known for** | Dismissal from 8Chan due to misconduct and poor performance, administrator of Kiwi Farms |
| **Salary** | None, living off his mother Candice Lynn Potter and his savings |
| **Spouse(s)** | None |
| **Parent(s)** | Candice Lynn Potter (mother) |



## Null
Male

**Profile Page**

Member Since: **Nov 14, 2012**   Messages: **17,368**   Ratings
Received: **+232,139 / 11,978 / -3,445**   Trophy Points: **350**
Featured Threads: **192**

Null was last seen: **Viewing unknown page, 4m ago**



FedEx carbon-neutral
envelope shipping

FedEx Express

Align top of FedEx Express® shipping label here.

ORIGIN ID:SLCA   (801) 895-3501
RUSSELL GREER
689 VINE STREET
MURRAY, UT 84107
UNITED STATES US

SHIP DATE: 11SEP18
ACTWGT: 1.00 LB
CAD: 6990525/SSF01904

BILL CREDIT CARD

TO US DISTRICT COURT CLERK
801 BROADWAY
ROOM 800
NASHVILLE TN 37203
(615) 736-5408
REF:

DEPT:



FedEx
Express

E

TRK# 7827 1935 6486
0201

FRI – 14 SEP 4:30P
EXPRESS SAVER

SH RNCA

37203
TN-US BNA

RT 323   6   A
16:30   6486
FZ B30   09.14

