Russell Greer
6337 South Highland Dr.
#209
Holladay, Utah 84121
801-895-3501
russmark@gmail.com
Pro Se Litigant

FILED

2018 SEP 20   AM 10: 14

U.S. DISTRICT COURT
MIDDLE DISTRICT OF TN

# IN THE UNITED STATES DISTRICT COURT

## MIDDLE DISTRICT OF TENNESSEE, NASHVILLE DIVISION

| | |
|---|---|
| **RUSSELL G. GREER,** | **PLAINTIFF'S RESPONSE TO DEFENDANT'S OPPOSITION TO MOTION FOR FINAL DEFAULT JUDGEMENT & CONTINGENT REQUEST TO SERVE DEFENDANT AGAIN** |
| Plaintiff | |
| v. | |
| **TAYLOR A. SWIFT,** | |
| Defendant | Case No.:      3:18-cv-00394 |
| | Presiding Judge: Aleta A. Trauger |
| | Magistrate Judge: Alistair Newbern |

Pursuant to *Rule LR7.01(a)(3)* of the Local Rules of Civil Practice for the Middle District of Tennessee, Plaintiff submits this Response to Defendant's Opposition to Motion for Final Default Judgement. In support of this Response, Plaintiff shows the Court the following:

## ARGUMENT

For the past few months that Plaintiff has been engaged in this potentially precedent-setting and meritorious lawsuit, Defendant and her representatives have been playing a game of "cat and mouse". As will be shown, Plaintiff properly served Defendant, and Venable LLP can accept service on behalf of defendant. Further, Greer was planning on hiring a process server to personally serve Defendant Swift at one of her upcoming events, to ensure that she knows of the lawsuit, as it has been mentioned to Greer that Defendant's representatives may be hiding proceedings from her, which could be a violation of fiduciary relationship and be possible grounds for criminal claims of lying in a legal document. Finally, if service was improper, Plaintiff would ask this Court to allow him to serve her representatives one more time, as he thinks he can locate another attorney that may suffice service. But with proper showing that service was correct, Default Judgement should be entered in the sum of compensatory damages that Plaintiff asked for in his motion: 22 million dollars. *Document 10.*

### 1. DEFENDANT WAS PROPERLY SERVED

#### A. Natalya Rose and Others Stonewalled Plaintiff

As stated in Plaintiff's Motion for Default Judgement, Defendant's representatives have been called and sent with Waivers to Waive Service. The following people were contacted to waive service: Jay Schaudies, manager to Taylor Swift; Robert Allen, manager to Taylor Swift; William Briggs, known lawyer to Taylor Swift; J. Douglas Baldridge, known lawyer to Taylor Swift; Tree Paine, publicist to Taylor Swift. **Exhibit A.** Even Ms. Natalya Rose, who drafted an

opposition motion and is Defendant's intellectual property lawyer, was sent a waiver to waive service and had three voice messages left on her firm's voice message box in June and July 2018.

In fact, on July 10th, a process server in Nashville went to Natalya Rose's law firm (Rose IP Law PPLC) to serve Natalya because Natalya was the most locatable and reoccurring legal representative for Defendant. The direct managers' address is unlisted. However, Natalya turned away the process server, stating that she had only represented Taylor Swift in a few matters and therefore wouldn't be able to accept service. **Exhibit B.** Not to mince words, but Natalya was dishonest in her interaction with the process server. A simple trademark search shows that Natalya has been an ongoing representative of Taylor Swift since 2014, with Natalya most recently trademarking a term for Taylor Swift in December 2017 and that trademark having a registration date of July 31, 2018. **Exhibit C.** This is the kind of representative that can accept service. The goal with service is to give it to a representative who can make Defendant aware of a lawsuit. Ms. Rose also is listed as being registered with her management company, Taylor Nation, which is what prompted Natalya to write her motion.

### B. Venable LLP Can Accept Service

Previously mentioned in the Motion for Default Judgement, Defendant Swift has been the target of multiple frivolous lawsuits. One such lawsuit was the case of *Mueller v. Swift,* which consisted of a radio DJ suing Taylor because he claimed she purposely interfered with his contract by getting him fired — because he sexually assaulted her. It was an utterly ridiculous case with no evidence or merit, yet it garnered all kinds of attention. This was affirmed to be frivolous by the jury finding in Swift's favor. The law firm that represented Swift in that action was Venable LLP. The lawyer that represented her was J. Douglas Baldridge. *Mueller v. Swift* (D. Colorado 2017).

(*https://scholar.google.com/scholar?scidkt=10983051836576119780&as_sdt=2&hl=en*).

After Natalya stifled service, Greer began to prepare to serve J. Douglas Baldridge because he had represented her in *Mueller.* **Exhibit D.** Baldridge's office is located in Washington D.C. Greer called Baldridge and there was no answer. Upon research, Greer discovered that another lawyer with Venable LLP had most recently represented Taylor Swift in November 2017, when he drafted Cease and Desist letters to a few blog groups that claimed Taylor Swift was an "alt-right radical". His name was William Briggs. His office is in Los Angeles. *Taylor Swift's Lawyers Just Got Their Asses Handed to Them — by a Blogger.* Digital Music News. (2017). The article states, "After issuing threatening legal demands to PopFront, Los Angeles law firm Venable LLP has now completely backed off…..We've contacted Venable LLP attorney William J. Briggs, II, who issued the threatening 'nastygram'. So far, no response…" **Exhibit E.**

Since Swift owns two homes within the Los Angeles area, and since she has conducted past legal proceedings with Venable LLP, it was presumed that Mr. Briggs was her personal attorney. A presumption, per *Federal Rules of Evidence 301,* is valid when an existing fact can establish a non-existing fact. Even though Greer didn't know 100 percent that Briggs represents Swift (a reasonable confusion when every one of her representatives avoids him), it was presumed based on existing fact of Venable LLP previously representing her, and the fact that several articles regarding the blog incident referred to Briggs as her "personal 'Big Law' attorney", that it would be proper to serve Briggs.

On August 7th, 2018, Tami, a process server from By the Book Attorney Services served Venable LLP at 2049 Century Park E #2300, Los Angeles, CA 90067. In a phone call with Tami, she confirmed that Mr. Briggs was out of the office on that day and so Venable, LLP was served. The clerk who is allowed to accept service, signed for the papers and said he would give to Briggs for Taylor Swift. Plaintiff did his part right. He served the defendant, through her

representatives, despite numerous roadblocks. Plaintiff shouldn't be penalized because her people don't communicate with one another.

The argument brought forth by Ms. Rose that Venable, LLP can't accept service on behalf of Swift is absurd. A month or two after Plaintiff filed his lawsuit in this Court against Swift, a frivolous lawsuit coming out of New York was filed against Ms. Swift. *SwiftLife, Inc. v. Swift et al* (New York Eastern District Court 2018) alleges trademark infringement on behalf of Taylor Swift and her management and property companies. As a side note, any beginning legal professional knows that to prevail on infringement, a trademark has to have a "secondary meaning" and has to be distinct. Trademarks in different categories can have similar names, such is the case here: a gaming app and a software developer, which makes the case frivolous. **Exhibit F.**

Upon looking at the docket sheet for *SwiftLife* on PACER, it appears that attorneys for the Plaintiff in that case saw Taylor Swift's previous lawsuits, and who did they have sign a waiver of service? Lo and behold, J. Baldridge, a Venable LLP associate; the lawyer who represented Taylor Swift in *Mueller* — the same lawyer that Greer reached out to with a Waiver of Service! Mr. Baldridge signed the waiver for *SwiftLife* on August 9th, 2018. **Exhibit G.** Thus, Ms. Rose's assertion is absolutely wrong that Venable isn't authorized to accept service on behalf of Swift because obviously they can and they just did last month — two days after Greer served Venable LLP's L.A. location. Even if the attorney wasn't correct (Briggs), the law firm was still correct and the affidavit listed the law firm as being served. It would still beg the question of why should Greer's solid claims not be heard when he made efforts to find the right attorney, but was ignored? He obviously found the right law firm. They obviously responded to the frivolous *SwiftLife* lawsuit, so it shouldn't matter what they think of Greer's lawsuit.

Any coherent, respectable law firm would still make sure to pass on a lawsuit even if it wasn't the correct attorney, but the correct firm. This happened at Greer's previous firm. Mail

would come in for a client or an attorney in a different location of their firm (arrives in Utah, but meant to go to California), they would still pass on the mail to California, not discard it because the lawyer was in a different location. They would look up the client and see that a certain lawyer represented the client and then Greer would pass the mail on. Greer and his co-workers believed in the integrity of their jobs. Since Venable signed the *SwiftLife* waiver two days after Greer did service (notes on the waiver suggest that Venable and Murphy Rodriguez, PLLC may have been communicating before Greer made service, based on the note, "*per agreement of counsel*"), it would have been in their docketing system that Swift was still a current client (or any sort of client), no matter the location, assuming that all offices are connected to one central docketing system. That's why lawyers have ethics and have rules. So it's astounding that no lawyers would ever respond to the lawsuit asking for millions with verifiable harm. As a legal professional himself, the actions of Swift and her representatives doesn't sit well with him. They should not sit well with this Court either. Ms. Rose's claim that Venabe LLP isn't authorized to accept service are proven wrong and thus her claim should be dismissed.

### C. Greer is Planning on Serving Taylor Swift Herself

Even though Greer made proper service, Greer feels obligated to give Swift a chance to know of the lawsuit and have her comment on the lawsuit because he sincerely wants to know of her thoughts and feelings of whether she should use disclaimers, not supposed vague statements made through her lawyers. The reason Greer has this concern is that a few days after the first lawsuit, a person using an anonymous identity reached out to Greer, and this person stated that he or she knew Swift well; stated that Swift looks for unique stories such as Greer's and stated verbatim, "Taylor has no idea that any of this happened. Her agents hid it from her." The person chided Greer for his anxiety, lectured Greer for what happened with the agents and told him that he "shot himself in the foot". This is all documented in Greer's book, *Why I Sued Taylor Swift.* Chapter 8.

The fact that Taylor has never publicly commented on this sequence of events, but has responded personally to frivolous cases, has aroused this suspicion in Greer. Of course, maintaining silence doesn't mean being unaware. But it has always perplexed Greer that Swift has remained mum on the events surrounding this. It has perplexed him that her assumed fans have destroyed his life, and those who may not be fans of her, yet she hasn't said anything. She hasn't ever apologized for their actions or for hers. The biggest mystery of all is that Swift never issued a Cease and Desist letter to Greer's book, even after having it sent to her.

**Greer isn't wanting any of type of attention from her, he is just looking for a clear, honest, non-vague explanation** as to why he had to incur injuries. This seems like a **reasonable request** to have that doesn't need to be "cloak and dagger". Greer has asked mental health counselors and friends and family why things didn't work out with Swift, but culminated into a mess. It is a question that haunts him nightly. It's a question at the heart of this case that only she can answer and not a representative citing case law. The greatest concern is that the representatives may be putting words in her mouth and not fulfilling their fiduciary duties to let her make choice of action. Greer was floored when he was called "troubling" and he didn't do anything except state that the agents had been negligent. When any person harms another through their actions, the person harmed should have the right to know why he was harmed. Since this has resulted in a legal action, and Greer presented 90 pages of documented evidence (there could be close to a thousand pages of evidence if this were to go to trial), Greer should have the right to know. Of course, this can be obtained through subpoenas and depositions, but Greer would feel confident upon personal service of her, given the past statements from the person who claimed to know Swift and claimed that the agents hid it from her.

With that all said, even though the two locations of Venable failed to communicate with one another and failed to respond before the 21 days, yet Greer has proven that service upon Venable was proper, he still plans on having a process server serving her very soon at an event

she has planned, so that SHE has the opportunity to decide the lawsuit and not risk having it swept under the rug, as was alleged to Greer. He intended on having her served personally last month, but wasn't able to find a person in time at the last event she had planned. But since he properly served Venable, he figured he would be OK if he waited for her next event — not because he has to, but because he wants to make sure that she is aware. He is going the "extra mile", so to speak. It's just hard with limited resources.

### D. Request to Serve Baldridge

If for whatever reason this Court feels that Venable LLP and/or Briggs were not properly served (which wasn't Greer's fault, as he did everything required of him), and with the revelations of Venable LLP lawyer J. Douglas Baldridge signing a Waiver of Service in the *SwiftLife* case, Greer requests if he could serve J. Douglas Baldridge. The action and request seems repetitive since Greer already served the correct law firm. But if serving the correct location or the correct lawyer was the problem, then Plaintiff requests to cure that fault by serving the correct attorney since he knows Baldridge and Venable represents Swift. Plaintiff only makes such a request if the Court feels serving the L.A. location wasn't good enough.

As previously stated, how could Plaintiff have possibly known **WHICH** location to serve if every one of her representatives refused to answer him? At least Plaintiff served the correct law firm. Since Briggs most recently represented Swift and she has property in L.A., it seemed most reasonable to serve that location and not the D.C. location. If Baldridge had represented Swift in the blog post cease and desist letters, then Greer would have known to serve him instead because it would established a pattern of representations, despite Baldridge ignoring Greer. But since Swift retained Venable for two prior actions, and now is being represented by Venable for the New York case, a pattern of representation has been established that serving Venable, no matter which location, was correct because she has established that she has a client relationship with the firm.

Briggs should have given the Complaint to Baldridge to give to Swift, if Baldridge was representing her in a new case, thus proving Venable has authority over Swift to accept service. It brings up matters of unfairness to have the attorneys accept and sign for the *SwiftLife* lawsuit, but not waive service for this lawsuit, which has more evidence of harm happening than supposed infringement of a name. Plaintiff only requests to serve Baldridge if the Court determines serving the L.A. location didn't suffice. But as stated, that should come down on Venable and not Plaintiff because he has proven he did his due diligence and served correctly.

## **CONCLUSION**

For these reasons, Plaintiff respectfully requests the Court to continue to proceed with a default judgement, as everything Natalya Rose brought forth was proven false. Venable's failure to respond and work within their law firm together should fall on the firm and not Greer. Mistakes are made every day by law firms that cost their clients millions. This is one of those mistakes. *Legal Malpractice Case Results.* Greene Broillet & Wheeler, LLP Website. (2018). (https://www.gbw.law/news-press/case-results/legal-malpractice-case-results/). (Has a list of cases due to legal malpractice that cost law firms millions of dollars). If the Court finds that location mattered, Plaintiff requests that he be allowed to serve J. Douglas Baldridge since serving the wrong location wasn't Greer's fault.

Respectfully submitted,

DATED: September 15th, 2018

Respectfully submitted,

By:

Russell Greer

Pro Se Litigant
/rgreer/



## CERTIFICATE OF SERVICE:

I certify that on September 14th, 2018, a true and correct copy of PLAINTIFF'S RESPONSE TO DEFENDANT'S OPPOSITION TO MOTION FOR FINAL DEFAULT JUDGEMENT & REQUEST TO SERVE DEFENDANT AGAIN was emailed to the following:

William Briggs, counsel for defendant, at: wjbriggs@Venable.com

Natalya Rose, IP attorney for defendant, at: nrose@roseipfirm.com

# EXHIBIT A


**From: Russell Greer**

**To:** tosborne@venable.com

**Bcc:** russmark@gmail.com

Hide 

## Waive or Accept Service

July 17, 2018 at 7:44 AM

✈ Found in Gmail Sent Mailbox

Dear Tiffany,

I am in a lawsuit with Taylor Swift. Your firm in the past represented her and I believe still do. Would you be willing to waive or accept service so that this can be forwarded to her agents or her?

Thanks
Russell

Sent from my iPhone

　　　　　　　　

To: jdbaldridge@venable.com    Hide

Bcc: russmark@gmail.com

## Waive service: Greer v. Swift. THEE trial of the century. Coming to a courthouse near you.

July 15, 2018 at 7:37 PM
⏀ Found in Gmail Sent Mailbox

Douglas,

Please waive service of the summons for the lawsuit I am in with Ms. Swift.

Thanks
Russell

---

AO 399 (01/09) Waiver of the Service of Summons

UNITED STATES DISTRICT COURT
for the
__Middle__ District of __Tennessee, Nashville Division__

| | | |
|---|---|---|
| Russell Greer | ) | |
| *Plaintiff* | ) | Civil Action No. |
| v. | ) | |
| Taylor Swift | ) | |
| *Defendant* | ) | |

WAIVER OF THE SERVICE OF SUMMONS



From: Russell Greer

To: wjbriggs@Venable.com

Bcc: russmark@gmail.com

Hide

## Request to waive service

July 15, 2018 at 7:01 PM

⊲ Found in Gmail Sent Mailbox

Mr. Briggs,

Please find attached my document to waive service of summons to save me cost expense. Since you are her attorney, and are thus a representative that can get this to her, you accepting service will suffice. Please sign the Waiver and scan back to me.

Thank you.
Russell Greer

pdf

# EXHIBIT B



‹     **(615) 902-4...**     📞   •••

about possibly handing in the
change of address form when you
drop off the other stuff?

Jul 10, 12:47 PM



**File type
not supported**

(615) 902-4793 • Jul 10, 12:56 PM

I wasn't able to get the attachment
you sent me.

I just listened to your voice
recording. Well, Natalya is the
registered agent to Taylor Nation,
which is one of Taylor's
management companies. So I don't
know what to tell you. I suggest
serving Jesse Jay Schaudies, who is
her agent. You won't be able to find
his office because it's unlisted. I
don't see why he can't be served at
his house.



Type a message

# EXHIBIT C




United States Patent and Trademark Office
Home | Site Index | Search | FAQ | Glossary | Guides | Contacts | eBusiness | eBiz alerts | News | Help

Trademarks > Trademark Electronic Search System (TESS)

TESS was last updated on Sat Sep 15 05:20:54 EDT 2018

**TESS Home | NEW USER | STRUCTURED | FREE FORM | BROWSE DICT | SEARCH OG | BOTTOM | HELP | PREV LIST | CURR LIST | NEXT LIST | FIRST DOC | PREV DOC | NEXT DOC | LAST DOC**

**Logout** Please logout when you are done to release system resources allocated for you.

**Start** List At: [ ] OR **Jump** to record: [ ] Record 2 out of 64

**TSDR | ASSIGN Status | TTAB Status** ( *Use the "Back" button of the Internet Browser to return to TESS*)

# TAYLOR SWIFT

**Word Mark**   **TAYLOR SWIFT**

**Goods and Services**   IC 009. US 021 023 026 036 038. G & S: Sound amplifiers; Cell phone cases; Fitted protective covers for mobile telephones; Stands adapted for mobile telephones, handheld computers, tablet computers, electronic book readers, portable computers, or portable music players; Grips adapted for mobile telephones, handheld computers, tablet computers, electronic book readers, portable computers, or portable music players; Devices for hands-free use of mobile telephones, handheld computers, tablet computers, electronic book readers, portable computers, or portable music players; Blank USB flash drives; Magnetically encoded gift cards; Sunglasses; Novelty sunglasses; Cases for eyeglasses and sunglasses. FIRST USE: 20170825. FIRST USE IN COMMERCE: 20170825

IC 014. US 002 027 028 050. G & S: Key chains; Key rings; Ornamental lapel pins. FIRST USE: 20171011. FIRST USE IN COMMERCE: 20171011

IC 016. US 002 005 022 023 029 037 038 050. G & S: Stationery boxes; Photo storage boxes; Cardboard boxes; Paper boxes; Boxes of paper; Boxes of paper or cardboard; Picture books; Plastic shopping bags. FIRST USE: 20161212. FIRST USE IN COMMERCE: 20161212

IC 020. US 002 013 022 025 032 050. G & S: Picture frames; Picture and photograph frames; Paper photo frames; Pillows; Accent pillows; Bed pillows; Novelty pillows; Throw pillows. FIRST USE: 20151127. FIRST USE IN COMMERCE: 20151127

IC 021. US 002 013 023 029 030 033 040 050. G & S: Beverageware; Beverage glassware; Cups; Coffee cups; Tea cups; Drinking cups; Cups and mugs; Mugs; Coffee mugs; Porcelain mugs; Glass mugs; Mugs not of precious metal; Travel mugs; Drinking glasses, namely, tumblers; Tumblers for use as drinking glasses; Drinking glasses; Potholders; Oven mitts; Kitchen mitts. FIRST USE: 20151126. FIRST USE IN COMMERCE: 20151126

IC 022. US 001 002 007 019 022 042 050. G & S: Cloth bags for laundry; Cloth bags for storage; Canvas bags for laundry; Canvas bags for storage; Laundry bags; Lanyards for holding badges; Lanyards for holding laminates; Lanyards for holding cards; Lanyards for holding keys; All-purpose nylon straps; All-purpose straps comprised of synthetic textile materials. FIRST USE: 20161202. FIRST USE IN COMMERCE: 20161202

IC 025. US 022 039. G & S: Dresses; Jackets; Jackets for adults; Outer jackets; Padded jackets; Bomber jackets; Denim jackets; Sports jackets; Jerseys; Hooded sweatshirts; Tops as clothing; Tops for children or adults, as clothing; Tops for men or women, as clothing;

‹      ⬆      📖      ⧉

holding badges; Lanyards for holding laminates; Lanyards for holding cards; Lanyards for holding keys; All-purpose nylon straps; All-purpose straps comprised of synthetic textile materials. FIRST USE: 20161202. FIRST USE IN COMMERCE: 20161202

IC 025. US 022 039. G & S: Dresses; Jackets; Jackets for adults; Outer jackets; Padded jackets; Bomber jackets; Denim jackets; Sports jackets; Jerseys; Hooded sweatshirts; Tops as clothing; Tops for children or adults, as clothing; Tops for men or women, as clothing; Tank tops; Crop tops; Short-sleeved or long-sleeved T-shirts; Bottoms as clothing; Bottoms for children or adults, as clothing; Bottoms for men or women, as clothing; Shorts; Sleepwear; Pajamas; Robes; Bathrobes; Dressing gowns; Cover-ups; Loungewear; Aprons; Headbands; Beanies; Toboggan hats; Scarves; Neck scarves; Silk scarves; Hosiery; Socks; Gloves. FIRST USE: 20161203. FIRST USE IN COMMERCE: 20161203

IC 026. US 037 039 040 042 050. G & S: Hair clips; Hair grips; Hair pins; Hair bands; Hair bows; Hair elastics; Elastic ribbons; Embroidery; Appliques; Fabric appliques; Ornamental cloth patches; Cloth patches for clothing; Embroidered patches for clothing; Ornamental novelty buttons; Ornamental novelty pins; Shoe laces. FIRST USE: 20170204. FIRST USE IN COMMERCE: 20170204

IC 028. US 022 023 038 050. G & S: Dolls; Doll accessories; Dolls and doll accessories; Toy glow sticks; Toy LED light sticks. FIRST USE: 20111117. FIRST USE IN COMMERCE: 20111117

IC 041. US 100 101 107. G & S: Providing online electronic newsletters in the fields of entertainment, music and entertainment; Providing online electronic newsletters relating to a musical artist and entertainer; Museum services; Organizing exhibitions for educational, cultural or entertainment purposes; Educational services, namely, providing displays and exhibits in the fields of entertainment, music and entertainment; Organizing events in the fields of entertainment, music and entertainment for cultural or educational purposes; Educational services, namely, conducting programs in the fields of entertainment, music and musical entertainment; Educational services, namely, after-school programs, classes, educational meetings, lessons, talks, and workshops, in the fields of entertainment, music and musical entertainment. FIRST USE: 20141213. FIRST USE IN COMMERCE: 20141213

| | |
|---|---|
| Standard Characters Claimed | |
| Mark Drawing Code | (4) STANDARD CHARACTER MARK |
| Serial Number | 87731243 |
| Filing Date | December 21, 2017 |
| Current Basis | 1A |
| Original Filing Basis | 1A |
| Published for Opposition | May 15, 2018 |
| Registration Number | 5529441 |
| Registration Date | July 31, 2018 |
| Owner | (REGISTRANT) Swift, Taylor INDIVIDUAL UNITED STATES 718 Thompson Lane, Suite 108256 c/o 13 Management, LLC Nashville TENNESSEE 37204 |
| Attorney of Record | Natalya L. Rose |
| Type of Mark | TRADEMARK. SERVICE MARK |
| Register | PRINCIPAL |
| Other Data | The name(s), portrait(s), and/or signature(s) shown in the mark identifies "Taylor Swift", whose consent(s) to register is made of record. |
| Live/Dead Indicator | LIVE |

TESS HOME   NEW USER   STRUCTURED   FREE FORM   BROWSE DICT   SEARCH OG   TOP   HELP   PREV LIST   CURR LIST   NEXT LIST   FIRST DOC   PREV DOC   NEXT DOC   LAST DOC

| HOME | SITE INDEX| SEARCH | eBUSINESS | HELP | PRIVACY POLICY

# EXHIBIT D

**ZIMBIO**

# J. Douglas Baldridge Photos

## Taylor Swift's Court Case Against David Mueller



# EXHIBT E



# ABOVE THE LAW

The unlucky lawyer who'll be forever attached to Swift's laughable effort to intimidate PopFront is Venable LLP partner William J. Briggs II. Oh, Taylor, look what you made him do!

In his long cease & desist letter to Meghan Herning, the Executive Editor of PopFront, Briggs offers the standard overreaching factual misrepresentations and hyperbolic threats about defamation per se (the last refuge of the impugned celebrity!), but provides an exceedingly light helping of caselaw for a four-page letter. He's got a blank space, baby, and he'll write your name, assuming your name isn't a citation to any legally binding precedent.

🔒 venable.com     ↻

# VENABLE LLP

**professionals | services | offices**

## PROFESSIONALS



### William J. Briggs, II

Partner

T +1 310.229.9933
Email

### Biography

William Briggs is a trial lawyer and civil litigator with broad experience in the entertainment industry. He represents some of the top talent in film, television, music and sports.

William's trial experience has been in state and federal courts, involving intellectual property disputes, complex entertainment contract disputes, partnership disputes, rights of publicity and first amendment issues, and employment matters.

   

# EXHIBIT F

 **PacerMonitor**    ☰    **Sign In** ➜

# SwiftLife, Inc. v. Swift et al

**New York Eastern District Court**

**Judge:**            Joseph F Bianco

**Referred:**         A Kathleen Tomlinson

**Case #:**           2:18-cv-04145

**Nature of Suit**    840 Property Rights - Trademark

**Cause**             15:1114 Trademark Infringement

**Case Filed:**       Jul 20, 2018

| Docket | Parties (6) |
|--------|-------------|

Last checked: **Monday Sep 03, 2018 5:36 AM EDT**

**Defendant**                  **Represented By**

Glu Games, Inc.               Marcella Ballard

3500 S. Dupont Hwy            *Venable LLP*

Dover, DE 19901               contact info

                              James Douglas
                              Baldridge

  




Maria Rose Sinatra
*Venable LLP*
contact info

**Defendant**

Taylor Swift

**Represented By**

Marcella Ballard
*Venable LLP*
contact info

James Douglas
Baldridge
*Venable LLP*
contact info

Maria Rose Sinatra
*Venable LLP*
contact info

**Defendant**

TAS Rights Management,
LLC
718 Thompson Lane, Suite
108256
Nashville, TN 37204

**Represented By**

Marcella Ballard
*Venable LLP*
contact info

James Douglas
Baldridge
*Venable LLP*
contact info

Maria Rose Sinatra
*Venable LLP*
contact info

# EXHIBIT G

absence of a summons or of service.

I also understand that ~~I, or the entity I represent,~~ *all Defendants* must file and serve an answer or a motion

under Rule 12 ~~within 60 days from~~ ~~, the date when this request was sent (or 90~~

*on or before September 18, 2008*

*(per agreement of counsel)*

---

~~days if it was sent outside the United States).~~ If I fail to do so, a default judgment will be entered

against me or the entity I represent.

By: _~~J. Douglas Baldridge~~_ (attorney or unrepresented party)

Its: *Counsel for All Defendants*

Print: *J. Douglas Baldridge*

Date: *August 9, 2018*

Address: *Venable LLP*

*600 Massachusetts Ave. N.W.*

*Washington D.C. 20001*

Email: *jbaldridge@venable.com*

Phone: *(202) 344-4703*

     Rule 4 of the Federal Rules of Civil Procedure requires certain defendants to cooperate in saving unnecessary expenses of serving a summons and complaint. A defendant who is located in the United States and who fails to return a signed waiver of service requested by a plaintiff located in the United States will be required to pay the expenses of service, unless the defendant shows good cause for the failure.

     "Good cause" does *not* include a belief that the lawsuit is groundless, or that it has been brought in an improper venue, or that the court has no jurisdiction over this matter or over the defendant or the defendant's property.

     If the waiver is signed and returned, you can still make these and all other defenses and objections, but you cannot object to the absence of a summons or of service.

     Dated: _August 9_, 2018.

                     Respectfully submitted,

                     MURPHY RODRIGUEZ, PLLC
                     3300 Oak Lawn Ave.
                     Suite 408
                     Dallas, Texas 75219
                     P: 972-752-0557
                     F: 972-692-7719
                     Ramon@gotexlaw.com
                     Murphy@gotexlaw.com

                                                   2

---

    Query    Reports▾    Utilities▾    Logout

(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICI*

**Marcella Ballard**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICI*

**Maria Rose Sinatra**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICI*

**Defendant**

**Taylor Swift**      represented by **James Douglas Baldridge**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICI*

**Marcella Ballard**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICI*

**Maria Rose Sinatra**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICI*

| Date Filed | # | Docket Text |
|---|---|---|
| 07/20/2018 | 2 | Corporate Disclosure Statement by SwiftLife, Inc. (Cooper, Andrew) (Entered: 07/20/2018) |
| 07/20/2018 | 3 | Proposed Summons. Re 1 Complaint, by SwiftLife, Inc. (Cooper, Andrew) (Entered: 07/20/2018) |
| 07/20/2018 | 1 | COMPLAINT *SwiftLife, Inc.* against All Defendants, Was the Disclosure Statement on Civil Cove by SwiftLife, Inc. (Attachments: # 1 Civil Cover Sheet, # 2 Exhibit A, # 3 Exhibit B, # 4 Exhibit E, # 7 Exhibit F, # 8 Exhibit G, # 9 Exhibit H, # 10 Exhibit I, # 11 Exhibit J, # 12 Exhibit K, # 13 (Rodin, Deanna) Modified on 7/20/2018 (Rodin, Deanna). (Entered: 07/20/2018) |
| 07/20/2018 | | FILING FEE: $400, receipt number 0207-10598948 (Rodin, Deanna) (Entered: 07/20/2018) |
| 07/20/2018 | | Incorrect Document Entry Information. Defendant was added to the case incorrectly; defendant w document entry #1 was deleted and re-entered against corrected defendant. (Rodin, Deanna) (Ente |
| 07/20/2018 | 4 | This attorney case opening filing has been checked for quality control. See the attachment for con (Rodin, Deanna) (Entered: 07/20/2018) |
| 07/20/2018 | | Case Assigned to Judge Joseph F. Bianco and Magistrate Judge A. Kathleen Tomlinson. Please do Individual Practices of the assigned Judges, located on our website. Attorneys are responsible for judges where their Individual Practices require such. (Rodin, Deanna) (Entered: 07/20/2018) |
| 07/20/2018 | 5 | In accordance with Rule 73 of the Federal Rules of Civil Procedure and Local Rule 73.1, the parti parties consent a United States magistrate judge of this court is available to conduct all proceedin a (jury or nonjury) trial and to order the entry of a final judgment. Attached to the Notice is a blan that should be filled out, signed and filed electronically only if all parties wish to consent. The for |